## STATE v. TOALE.

1. HIGHWAYS—NEIGHBORHOOD ROAD.—Testimony tending to show that a
   well defined road was laid out through unenclosed woodland, and
   used by the public for more than twenty years, is some evidence of
   adverse user.
2. EVIDENCE—IBID.—DEED.—In indictment for obstructing a neighbor-
   hood road, deed reserving to defendant's grantor, his heirs and as-
   signs, use of all necessary roads, is not competent unless it show the
   existence of the road in question.

Before PURDY, J., Aiken, Fall Term, 1905.   Affirmed.

Indictment against P. P. Toale, Elijah Salley, Humphrey Chavous and Ben Chavous for obstructing neighborhood road. From sentence on verdict, defendants appeal.

*Messrs. Hendersons,* for appellant, cite: *Adverse user for twenty years must be shown:* 63 S. C., 494; 54 S. C., 294. *Deed improperly excluded:* 63 S. C., 453.

*Solicitor Jas. E. Davis* and *Messrs. Davis, Gunter & Gyles,* contra.

June 26, 1906.   The opinion of the Court was delivered by

Mr. Justice Gary.   The defendants were indicted for obstructing a neighborhood road on the 12th of April, 1905, and were found guilty.   At the trial they admitted placing the alleged obstruction in the road, but claimed that it was not a neighborhood road.   They appealed upon exceptions, the first of which is as follows:

"The defendants except that his Honor, the presiding Judge, erred as matter of law in overruling the motion for the new trial, which was made upon the following grounds, to wit: 'That it is an admitted fact, or at least one proven beyond a doubt by witnesses for both the State and the defense, that the road in question passed through unenclosed woodland, and there was an absolute absence of any testimony to show any adverse user for a period of twenty years, which fact must have been affirmatively proven beyond all reasonable doubt before a legal conviction could be secured for obstructing a neighborhood road running through unenclosed woodland.'   It is respectfully submitted that it was error of law to refuse to grant a new trial upon said ground, it being submitted that the testimony showed undoubtedly that the road in question passed through woodland, and it being further admitted that there was absolutely no testimony of any adverse use; hence, it is submitted, that the verdict was not a proper one, and should have been set aside and a new trial granted."

The State's witnesses testified that the road had been used by the public for more than twenty years. The appellants, however, contend that the road runs through unenclosed woodland, and that there is no testimony tending to show an adverse user by the public.

Rev. A. E. Price, a witness for the State, testified as follows: "Q. How long have you known that road? A. The first time I ever saw it was '52. Traveled it then and '53 as a junior preacher on the Lexington Circuit. I went to Ebenezer Church to preach. Q. Where did the other end of that road lead from Mr. Whetstone's? A. Out into the Columbia and Barnwell road and into the Ninety-six road. Q. Have you known that road since that time? A. Oh, yes, traveled it six or seven years since then regularly. Q. For what purpose? A. Ministerial duties. Q. Along in '52 and '53 and since that time, the road was open? A. Yes, the road was open. Q. Who used the road generally along then? A. I can only speak for myself. I suppose the neighborhood used it. Q. What was the appearance of the road at that time? A. Had the appearance of being quite an old road to me then. Q. Nothing new about the road at that time? A. Nothing I could see, looked like it had been there 100 years to me. Q. Since that time you say you have traveled that road? A. I have traveled it several years since then regularly every month. Q. Up to the present do you know of your own knowledge that that road has been in use by the public? A. Yes, I know it has been in use. It is used a great deal more now than it used to be. Along in '52 and '53, it was not used a great deal because there were not many in that country. It was an outlet to this Jeffcoat Bridge across the Edisto. Q. It is used now more than it used to be? A. Yes, it seems to me. Q. For what purpose does the public use it now? A. I couldn't tell you. I suppose they go to church; used generally by the public for travel. It is a near road through that country."

W. C. Vann, a witness for the defendants, testified as follows: "Q. Where do you live? A. Aiken County, about

two miles from this obstructed road. Q. How long have you lived in that neighborhood? A. All my life—about fifty years. Q. Did you ever haul timber through any of this land? A. Yes, sir. Q. When? A. It has been 34 or 35 years ago. Myself and D. S. Sawyer cut a road leading from Vann and Kennerly land across Hollow Creek to Harth's platform on the North Edisto River. Q. From the Vann land through whose land? A. This disputed land and Harth's land. Q. In order to cut that road, who did you get permission from? A. From Col. Morgan, who owned the land on this side of the creek, and W. J. Harth. Q. W. J. Harth is the man who owned all this land? A. Yes. Q. You and Sawyer cut that road? A. Yes. Q. How long did you run that road? A. I hauled timber over there about seven years. Q. What sort of road did you cut? A. We cut a road through the woods, built a canal across the Hollow Creek, built a bridge across the canal, and forded the swamp and on to the river. Q. Where you built a bridge across the canal, how near was that to Whetstone's? A. About half a mile. Q. And the road which you cut when it came out into Harth's land, did it come out where this obstruction is? A. It came right near where this obstruction was."

P. P. Toale, one of the defendants, testified as follows: "A. There was no road there at all until we built the houses; the land was cultivated before the war. It was an old colonial place and was cultivated in colonial days and is grown up since. The land, as a rule, is level. I can drive my buggy through any portion of it almost. Q. What was the condition of the trees as to new growth? A. The place is full of second growth. Occasionally you will find a virgin growth. Q. Do you know anything about a pasture fence being changed there? A. I do. I know that the fence is moved back now. Q. Was that fence ever across the road-bed there? A. Yes. Q. Put there and how long did it remain there? A. I think that remained there for three or four years or more. At that point you are mentioning there are half a dozen roads coming from Whetstone's land on to

ours.    There are old roads marked on the plot between that and the present place in dispute.    There were several roads, and the fence that was there was moved back and the gate is there yet.    Q. Did you put the obstruction at that place? A. Yes.    Q. Why?    A. I wished to close the road."

This testimony tends to show that the road ran through the land at a time when it was not enclosed woodland; that a well defined road was laid out, and that the use thereof by the public was adverse.    This exception is overruled.

The second exception is as follows: "The defendants except, that his Honor, the presiding Judge, erred in refusing to admit as testimony in the case the certified copy of the deed of William J. Harth to Ann E. Whetstone, dated 29th March, 1871, which comprises exhibit A in this appeal, and which contains the following reservation: 'Reserving, however, for my own use and the use of my heirs and assigns, the canal on the southern side of said land, the wasteway at the mouth of said canal, and all necessary roads leading through said tract of land to the same.' In that it is submitted that this deed was relevant to the issue and of vital importance as tending to show that the road in question (if it existed at the time of the execution of the deed, which the State's witnesses claimed,) was reserved for the benefit of the then owner of the balance of the Harth lands and his assigns—the testimony showing that Mr. Toale was the husband of and acting for Mrs. Ellen A. Toale, the grantee of Mr. Harth.    It is submitted that the deed was relevant and important upon one of the crucial questions of the case, viz: Whether the road in question was used privately or publicly and adversely.

"It is further submitted that the reason given for excluding the said deed, to wit: 'that is a private contract between grantor and grantee.    The issue here is between the public and the defendants as to the obstruction of a public highway'—was erroneous.    To the contrary, it is submitted, that the stipulation in the deed above quoted created an easement

in favor of Harth, his heirs and assigns, which was really a covenant running with the land, and which enures to the benefit of Mrs. Toale and her representatives and agents, as the assignee of Mr. Harth, as well as to Mr. Harth himself."

The introduction of the deed in evidence would not have been material unless it tended to show the existence of the road in question, and we fail to see wherein this fact would have been beneficial to the appellants. This exception is likewise overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.